Our next case is Metropolitan Area EMS Authority et al. v. Secretary of Veterans Affairs 2024-1104, Mr. Stimpson. Thank you, Your Honor. My clients are small municipal ground ambulance providers in Texas and Pennsylvania. They have large numbers of veterans in their service areas and when they transport those veterans it's typically in response to a 911 call and it's almost always to and from a place besides a Department of Veterans Affairs facility, like a roadside accident scene or a private residence or a small community hospital. Since 2008, the Secretary of Veterans Affairs has paid for those transports at the actual cost, meaning the bill charges for my clients, pursuant to a regulation at 38 CFR 70.30A4. The Secretary has now published a rule that's going to go into effect next February that will reduce the rate on not only those transports but all transports of veterans on a non-contract basis to the Medicare rate. The problem with that rule is that the only statutory authority that the Secretary cites for it is at 38 USC 111B3C and 111B3C says that the Secretary's authority to pay the Medicare rate applies only to transports to or from department facilities, meaning transports where the pickup of the veteran or the drop-off of the veteran is a VA hospital or outpatient clinic. The rule goes far beyond the type of the statute to reach all transports, regardless of the pickup or drop-off location, and it fails on that basis alone because Congress simply did not give the Secretary the authority that he seeks to exercise at the rule. The rule is also arbitrary and purposeless.  Counsel? Yes, Your Honor. Could you address, just sticking to the statutory interpretation point, could you address the government's argument that the second sentence of Section 111A undermines your argument by only referring to a department facility as opposed to referring to both a department facility or other place? They make this point about how that is going to cause problems or make the interpretation that you provide absurd. So, I'm happy to, Your Honor. The government's interpretation is based on one case, New Hampshire Lottery Commission versus Rosen. New Hampshire Lottery Commission versus Rosen involved one sentence of the Wire Act that had two clauses. The first sentence had limiting language at the end of the clause. The government argued in that case that the limiting language at the end of the first clause applied only to that clause, and the plaintiffs argued that the second clause paraphrased the first, and they should be read to be co-expensive. That case used the term shorthand for the second clause. There is no such thing as a shorthand canon of construction. It simply does not exist, and that case does not apply here for at least six reasons. Why doesn't the rule derive support from A, 111A? The shorthand canon, Your Honor, or the government's interpretation? Well, the proper interpretation. Sorry, I couldn't hear you. A proper interpretation. Well, perhaps your answer is that A doesn't refer to the lesser of two options. Is that the answer? If you look at Section 111A, what it says is that the Secretary may pay the actual necessary expense of travel of any person to or from a department facility or other place, or other place. The words or other place do not appear in Section 111B3C, and that's important for several reasons. First, the word facility and the word other place are different. Webster's defined the word place at the time the statute was enacted to mean locality, and a locality can include that it's not limited to a facility. So the meanings of the words place and facility are just different. The word place, other place, also follows the words department facility, and under the canon of nocicepture, it has to have a different and more expansive reading in relation to the department facility. There's also a long line of Supreme Court cases, which we cite on page 10 of our reply brief, that say that when Congress uses the word war, the disjunctive words have different meanings. So Congress separated words that have different meanings with the word war, and they must have different meanings as a consequence. When you look at Section 111B3C, if you give it its plain language reading, it limited it to transports to or from department facilities. It fits very neatly underneath 111A, and when you adopt the government's reading and try to apply New Hampshire Lottery Commission, the two are out of sync. And in fact, New Hampshire Lottery Commission involved a much different statutory provision. One sentence of the Wire Act that had two clauses. Here we have a very lengthy statutory provision that has two separate paragraphs that have entirely different words in the two paragraphs. So that case really has no application here to this statute. I think two other points here of consideration in the statutory analysis. The first is that the government's interpretation would mean that the tail would wag the dog. The dog here is 111A, and the tail is 111B3C. And the government would apply the Medicare rate to all transports under the statute, as well as all transports under an entirely different statute, 38 U.S.C. 1728, which the government currently invokes to pay claims at actual costs or bill charges. And it can't be that a limited statutory provision applies to cover all transports under both statutes. Otherwise, Congress wouldn't have written the two statutes the way that they are. And to punctuate that point, Congress actually had opportunities in 2011 and 2012 to amend 111B3C and took a pass both times. Mr. Stimson, could you help me with the government makes this argument about air travel and says that your interpretation, if adopted, would mean they would no longer have authority to transport veterans by air. I'm sure you're familiar with the argument. Can you help me with it? Sure. So that sentence was added to the statute fairly late in its life. And that sentence of the statute discusses the reasonable cost of airfare. The proper reading of that sentence is that it refers to commercial air transport, because that's what airfare typically refers to in the ordinary use of the term. The statute itself is not limited to ambulance transports. It covers non-ambulance transports as well as emergent and non-emergent transports. The sentence relating to air transport uses, quote, a department facility and does not also say or other place. Is that correct? That's correct. So wouldn't your interpretation, if we adopt it, that a department facility has a different meaning than a department facility or other place, wouldn't it have the effect of limiting the authority of the secretary to pay for commercial airfare, for example, involved with transport to something other than a department facility? That's correct. I agree with that interpretation. And that's the way Congress wrote the statute. That's the way the sentence reads. So would that be just given how the statute's currently interpreted by the secretary, if I understand it correctly, the secretary does believe he has authority to pay for commercial airfare to non-department facilities. If we adopt your construction, it would mean that the secretary no longer would have authority to pay something for veterans that he's currently paying for. I don't know whether the department is currently paying for commercial air transportation or not. It's beyond the scope of the facts of the case. I think this is a concern that- But assuming it is, let's assume hypothetically that it is. Then what's your answer to Judge Stark's question? It's twofold. First, this is the language that Congress put in the statute. And it's plain and unambiguous. The issue is more one of policy. And if I were to intuit why Congress would have written the statute that way, it would be because airfare as opposed to ambulance transportation is non-emergent. And the VA would have a compelling reason to limit commercial airfare to non-VA facilities because VA facilities are going to most likely provide the same non-emergent care that non-VA facilities would provide. So I think actually from a policy perspective, the rational reading of that sentence, the plain language reading of that sentence makes rational sense. Going back to my earlier point about Congress having an opportunity to amend 111B3C, it had the opportunity to do so in 2011 and it had the opportunity to do so in 2012. It took a pass both times. If Congress wanted the statute to say what the Secretary wants to do here, it would have amended the language and it did. Turning briefly and by remaining time to the arbitrary and capricious point, the Secretary certified under the Regulatory Flexibility Act that the rule would not impact, have a significant economic impact on a substantial number of small entities. That certification was made based on economic projections. Economic projections that did not take into account actual cost data that the Secretary had in his possession that showed that the impact of the rule will be five times what was projected. Five times. That is not an immaterial oversight. That is a material oversight. And it's one that is prejudicial to my clients, two of which are small entities with statutory standing under the RFA. If the Secretary had just considered the data that he actually had in his own possession and had done a regulatory flexibility analysis, then he would have considered the possibility of carving my clients out from the rule. And the fact that he failed to consider that option when he had the data in his possession was incredibly prejudicial to my clients. We submit that that, too, is a basis for vacating, implementing to the agency. I'd like to reserve the remainder of my time for a while. We will do that, Mr. Simpson. Thank you. Mr. Kershner. Yes. Good morning, Your Honors and mentees of the Court. Much of this case is a blatant challenge to the wisdom of an act of Congress that empowered the Department of Veterans Affairs with no condition or qualification to pay ambulance service providers the rates that are set up by CMS. The Court should reject that challenge and allow the VA to do precisely what Congress authorized it to do. First and foremost, the Court should do so because the petitioners forfeited the vast majority of the arguments. Mr. Kershner, could you talk about the statutory interpretation point? Could you start with that since that's what we've been just most recently focusing on? I have to say that I'm having a hard time thinking that the First Circuit N.H. lottery case applies here. I'm seeing a big difference between the language at issue here, which is department facility or other place, and the language that was in the N.H. lottery case. And I'm having a hard time with your shorthand statutory interpretation argument. So you might want to start by addressing that. Absolutely, Judge Stolten, I'm happy to. So the First Circuit in the New Hampshire Lottery Commission case did not come up with some sort of a shorthand canon, and we're not advocating for a shorthand canon either. All we are saying, and all the First Circuit said in that other case, is that when the Court interprets statutory language, it has to consider that language in context. And when the context indicates something about the language, for instance, that Congress used a particular phrase as shorthand for another longer phrase, would you give that context meaning and interpret the statutory provision for it? But that problem I'm having is that normally if a statute says A or B, and then later it only refers to A, I don't usually understand that to mean shorthand for A and B. That's very true, Judge Stolten. But again, what I'm asking the Court to do is to look at the context. And if we look, if we put aside for a moment Section 111b-c, which is the operative provision in this case, and if we take a look at Section 111a only, the first sentence of that provision says a department facility or other place. The second sentence, when it explains the meaning of a phrase used in the first sentence, the phrase actual necessary expense of travel, it uses the short phrase a department facility. Isn't there also another reasonable interpretation of that to mean that actually the only thing that second sentence says is that for airfare, we're only going to pay when it's reaching a department facility? In other words, you're not going to pay for commercial airfare when it's to somewhere other than the other place. So we don't think that's a reasonable way to interpret it because that second sentence simply explains the meaning of a phrase in the first sentence, actual necessary expense of travel. Then in addition to that, Judge Stolten, you have to look at how Section 111a relates to the following section. Can I go back to that, what you just said? I hear what you're saying. I don't think that this second sentence defines all necessary expense of travel. It's only saying that it could include reasonable cost of airfare when certain conditions are met, right? That is, the condition being that it has to be a department facility. So why is it that you're saying that the second sentence is definitional? It's not that it's definitional. It explains the meaning of actual necessary expense of travel. And I agree with you, Judge Stolten. It doesn't define everything that that phrase might mean. But as Judge Starr correctly pointed out, the question that comes up then is what happens in a situation where a veteran has to travel to a non-department facility and the only practical way to do so is to do so by air. Does that mean that the secretary no longer has the ability to cover that type of expense? And the VA doesn't think so. The VA has always, since this statute was adopted by Congress, the VA has always understood that second sentence to cover everything that the first sentence in 111A does. Can I ask you, I want to ask you one other thing about this. The language airfare in this sentence we're talking about, do you agree that that's commercial airfare? That's a point that was made in the reply brief. And I just don't have your response on that. It's not clear, Your Honor. And to be honest with you, I'm not sure what the VA's position on that is. The reason they say it's not clear is because there is another provision that's relevant to travel by air, and that's section 111B4. Can I ask you, do you think this reference to reasonable cost of airfare includes air ambulance transport? I mean, I think that might be special transport. So I don't think it does. But what do you think? I'm not sure whether it covers air ambulance transport. Counsel, aside from the nature of the services, I'm looking at the language of these provisions. The rule has to find support either in 111A or 3C, or at least not be in opposition to these rules. Now, it can't be based on C, because C doesn't have the other as an alternative to the department. It's limited to the department. And it can't be based on A, because A doesn't have the lesser qualifications. So it seems to me that this rule is an excess of what is provided by A or C. I think that's the crux of the issue, Judge Lurie. We understand section B3C to cover any transfer to or from a department facility or other place. Well, you're reading language into this statute, which appears elsewhere and could have appeared here if the drafters had intended it. But they presumably didn't. That's right. But when Congress used the phrase, a department facility, without the addition of the words or other place, which it has used throughout section 111, we understand that to be shorthand for the longer phrase, a department facility or other place. And again, that's based on the structure of this entire provision, not just 111B3C, but all of 111, and the way those provisions work together. Sounds like you're using shorthand as a substitute for a failure to include something in the statute. Now, let me ask you, what role does 1728 play here? So section 1728 is a specific application of the more general authority under section 111A. Section 111A gives the VA the discretion to reimburse travel expenses. Section 1728 gives the VA the authority to reimburse travel expenses in case of emergencies. And within section 1728, there is a cross-reference to section 111. It says that such reimbursement has to be done under the terms and conditions of section 111. And our understanding is that… Are you saying that 1728 provides support for your position? It does not provide direct support, but it does not undermine our position either. Well, it certainly doesn't provide for two choices, including the lower of two of them, including the Medicare rate. You're correct, Judge Laurie. Section 1728 does not include the lesser of language of section 111B3C. But if I may, I want to return to the statutory interpretation issue of section 111. Well, that's what we've been on. I'm sorry, Your Honor. We're not returning to it. We've been on it. So the other thing that we're to consider is VA's regulatory practice at the time section 111B3C was adopted in 2011. At the time, as today, the VA viewed any provision within section 111, talked about travel to and from a department facility, as also referencing the broader term, to or from a department facility or other place. And there's a canon of statutory interpretation that says when you have this type of prevalent regulatory practice, Congress presumably knows it, understands it, and is legislating with that as a background principle. And so that is further indication, in addition to the text and structure of section 111, that Congress used the phrase a department facility as shorthand for the phrase a department facility or other place. Can I ask you about your forfeiture argument? You're contending, if I understand correctly, that this statutory interpretation question that we've been focused on is one we can't even reach. Is that right? That's correct. And that's based on a D.C. Circuit forfeiture rule that, if I understand correctly, we've never adopted. Is that also right? That is correct, although many other circuits have, as we point out in our brief. I also understand the D.C. Circuit rule, forfeiture rule, has some exceptions to it. If we were to adopt the rule, we would presumably adopt the exceptions to the forfeiture as well, wouldn't we? So it does have some narrow exceptions. You're absolutely correct. But the fact that the challenge is a challenge to the statutory authority of the agency, that is not in itself an exception. And in fact, the D.C. Circuit made clear in the Korotov v. Bilsak case that we cited in our briefing that arguments about statutory authority can be weighed and can be forfeited if they are not raised during the rulemaking process. What about fundamental assumptions? Why would this case not fall into that exception to the forfeiture rule? Right. So there is a case law in the D.C. Circuit that talks about key assumptions and how those may not be weighed. But the way the D.C. Circuit has applied that exception to forfeiture is by focusing only on factual findings that a statutory provision requires the agency to make before the agency promulgates a regulation. That's not the case here. What we have here is an argument by the petitioners that everything they raise is necessarily a key assumption. The way they view the key assumptions exception is that it covers everything that may be brought up after the rulemaking to the point where it would be an exception and swallow the rule because everything would become a key assumption. But again, I do want to emphasize that under the Korotov v. Millicent case, the statutory authority of the agency to regulate is not a key assumption. That case, if I may provide just a little bit of a background, that case involved a Department of Agriculture regulation that required producers of almonds to treat those almonds for salmonella. And after the USDA published the final rule, some producers of almonds came to court and actually USDA does not have statutory authority to regulate almonds in that way at all. And the D.C. Circuit said that argument has been forfeited because it was not raised during rulemaking, even though that goes to the statutory authority of the agency. So how can that survive after Loeb or Bright? Doesn't the Supreme Court make extremely clear that courts have to interpret statutes, even and maybe particularly ones that are fundamental to an agency authority? So, Your Honor, courts certainly have the obligation to independently interpret statutory provisions. The Supreme Court said that clearly in Loeb and Bright. But the Supreme Court also said in Loeb and Bright that agency interpretations of statutory provisions have not become entirely irrelevant. They are still relevant because they may provide guidance to the court as the court is trying to interpret statutory provisions. I think the Court of Skidmore has said even if those agency interpretations do not have the power to control the outcome of a case, they do have the power to persuade. Okay, but your forfeiture argument wouldn't be power to persuade. It would be Federal Circuit, don't even look at this. You can't look at this. And by default, whatever the agency says has to go. It has to survive. Right, but not because the agency's interpretation is correct or because the agency's interpretation receives deference. We're not saying that. What we are saying is the agency's interpretation survives because the petitioners failed to bring their objection to the agency's attention when they had an obligation to do so. Counsel, doesn't the D.C. Circuit's rule find some of its underpinnings and how it was created in Chevron itself? It does not, Your Honor. And he pointed that out in our notice or sort of response to Petitioner's Notice of Supplemental Authority. The D.C. Circuit's forfeiture rule is based on a foundational principle of administrative law that simply says objections to agency action, any type of agency action, including rulemaking, has to be brought to the agency in the first instance so the agency has an opportunity to consider it. That foundational rule is not a Chevron rule at all. Where it's statutory interpretation that is reviewed de novo and given the language in Loperbright, why is that required? It is required. And again, those are simply the background principles that support this type of foundational principle. It's required because it promotes judicial efficiency. For instance, if an objection, any kind of objection, is brought to the agency— But if there's no deference given to the agency's interpretation, why would it be required in a circumstance like this for there to be a specific preservation of the statutory question, especially where it does seem like it's a key assumption? Right. So again, I think it would be required because what the agency says about the statutes is still relevant. It's not controlling. It doesn't get deference. But it is still relevant. And if there is such an objection that is based on the interpretation of the statutory provision, during rulemaking, it has to be brought to the agency so the agency can opine Thank you, Counsel. Your time has expired. Mr. Stimson has two minutes for rebuttal. Thank you, Your Honors. I'd like to make three points. The first is to revisit the sentence in 111A that talks about the reasonable cost of airfare. As I explained earlier, Petitioner's view is the most natural reading of that sentence is that it applies to commercial non-emergent travel. And a policy concern was raised about the ability of veterans to reach non-department facilities through commercial air travel. VA has a separate statutory authority at 38 U.S.C. 1703 that enables it to cover and pay for services that cannot be obtained at VA facilities. So if you look at the overall VA statutory regime, that would be a backstop for the type of policy concern that the panel would like for discussion. Second point is that on the Regulatory Flexibility Act, there is a specific statutory provision in 5 U.S.C. 603 C.4 that would have obligated VA to consider an exemption for my clients QVA and VAA from the rule. And they did not receive that consideration because the Secretary neglected to consider actual cost data in its possession. That is something the Secretary of my statute would have had to consider for them and did not. And my third point relates to waiver. The law in the Federal Circuit has been the same since 1986 when the Court decided Beard v. General Services Administration 801 F. 2nd. 1318. There is no waiver when the resolution of a statutory issue does not require the development of a factual record, the application of agency expertise, or the exercise of administrative discretion. And that is exactly the situation here. D.C. Circuit law is totally irrelevant. Thank you, Your Honors. Thank you, Counsel.